UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| COLEEN R. GARMAN, o/b/o Richard Garman (deceased), </br> Plaintiff, </br></br> v. </br></br> JO ANNE B. BARNHART, </br> Commissioner of the Social Security Administration, </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | </br></br></br>CAUSE NO.:  2:05-CV-00304-PRC |

**OPINION and ORDER**

This matter is before the Court on Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act [DE 29] ("Plaintiff's Fee Application"), filed by the Plaintiff on September 5, 2006.

**PROCEDURAL BACKGROUND**

On July 17, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. Plaintiff's application was denied initially and later again upon reconsideration. On March 18, 2002, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). On June 19, 2003, a hearing was held in Fort Wayne, Indiana, before ALJ Richard VerWiebe. In a decision dated April 12, 2004, the ALJ denied Plaintiff's claim.

On May 24, 2004, Plaintiff filed a timely Request for Review of the ALJ's decision. On June 10, 2005, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's April 12, 2004 decision the final determination of the Commissioner.

On August 12, 2005, the Plaintiff filed a timely Complaint with this Court, seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

On November 21, 2005, the Commissioner filed Defendant's Motion to Reverse, Enter Judgment, and Remand Commissioner's Decision for Further Administrative Proceedings. On December 5, 2005, the Plaintiff filed Plaintiff's Response in Opposition to Defendant's Motion to Reverse, Enter Judgment, and Remand Pursuant to Sentence Four. The Commissioner did not file a reply brief. On March 6, 2006, the Court denied the Commissioner's Motion and set a scheduling order.

On April 20, 2006, Plaintiff filed Plaintiff's Motion to Remand Pursuant to Sentence Six along with Plaintiff's Memorandum in Support of Summary Judgment or Remand Pursuant to Sentence Six, asserting that evidence (specifically, treatment notes from Plaintiff's doctor and internet articles) submitted to the Appeals Council was new and material. On May 4, 2006, the Commissioner filed Defendant's Response to Plaintiff's Motion to Remand Pursuant to Sentence Six, and on May 15, 2006, Plaintiff filed Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Remand Pursuant to Sentence Six. On June 20, 2006, the Court denied Plaintiff's Motion, finding that while the treatment notes and internet articles appeared to be new, they were not material. In a footnote, the Court encouraged the parties to discuss a joint stipulation to remand with the appropriate instructions. Also, on May 24, 2006, the Court granted Plaintiff's Motion to Substitute Party and Amend Caption, substituting "Coleen R. Garman o/b/o Richard S. Garman" for the deceased, prior Plaintiff Richard S. Garman.[1]

---

[1] Throughout the opinion, the Court uses pronouns in order to correlate to Plaintiff Richard S. Garman or Plaintiff Coleen R. Garman o/b/o Richard S. Garman.

2

On July 20, 2006, the parties filed a Joint Stipulation to Reverse, Enter Judgment, and Remand Commissioner's Decision for Further Administrative Proceedings. On August 3, 2006, the Court granted the parties' Joint Stipulation and ordered that the Commissioner's decision be reversed and the case remanded for further administrative proceedings and a *de novo* hearing pursuant to the following terms: (1) Plaintiff may supplement the record, and (2) the ALJ shall obtain vocational expert testimony in order to determine the exertion level of Mr. Garman's past relevant work and whether Mr. Garman was able to perform his past relevant work or other work that existed in the national economy. The Court further directed the Clerk of the Court to enter judgment pursuant to Rule 58, which the Clerk did on August 4, 2006.

On September 5, 2006, Plaintiff filed Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act. On September 20, 2006, the Commissioner filed Defendant's Response to Plaintiff's Application for Attorney's Fees Under the Equal Access to Justice Act. On September 29, 2006, Plaintiff filed Plaintiff's Reply in Support of His Application for Attorneys' Fees Under the Equal Access to Justice Act.

**ARGUMENT**

In Plaintiff's Fee Application, the Plaintiff requests an award of attorney's fees at an hourly rate of $157.50 for work performed in 2005 and $158.75 for work performed in 2006, under the Equal Access to Justice Act ("EAJA"), which represents the cost of living adjustments allowable under 28 U.S.C. § 2412(d)(2)(A)(ii) when employing the "All items" figure provided by the Consumer Price Index. The Plaintiff also requests an hourly rate of $100.00 for work performed by Suzanne Blaz as a law clerk/paralegal. Finally, Plaintiff requests compensation for the time spent preparing the instant motion for fees. Based on these rates, Plaintiff requests fees in the amount of

3

$3,759.44, which represents the following: 3.80 attorney hours at the rate of $157.50 per hour in 2005 (totaling $598.50); 7.25 attorney hours at the rate of $158.75 per hour in 2006 (totaling $1,150.94); 17.60 law clerk/paralegal hours at the rate of $100.00 per hour (totaling $1,760.00); and compensation for the Court filing fee in the amount of $250.00. In her Reply brief, Plaintiff requests an adjusted total amount of fees in order to include time spent in drafting her Reply, specifically 1.0 attorney hours at the rate of $157.50 per hour in 2006 (totaling $157.50) and 4.10 law clerk/paralegal hours at the rate of $100.00 per hour (totaling $410.00), for a total of $4,326.94 in fees.[2]

In opposition to Plaintiff's Fee Application, the Commissioner argues that the Court should deny Plaintiff's request for fees because: (1) Plaintiff has failed to show eligibility for fees based on net worth, and (2) the Commissioner's position was substantially justified. In the alternative, if the Court grants Plaintiff's Fee Application, the Commissioner argues that the Court should reduce Plaintiff's request for fees. Because the Court finds that the Plaintiff has failed to show eligibility as a "party" as defined in the EAJA, the Court need not address the Commissioner's other arguments. See *Sierra Club, Illinois Chapter v. Brown*, No. 96 C 4768, 1999 WL 652047, at *2 (N.D. Ill. Aug. 20, 1999) (citing *Commissioners of Highways of Towns of Annawan v. United States*, 684 F.2d 443, 445 (7th Cir. 1982) ("Failure to qualify as an EAJA party ends the fee inquiry")).

## ANALYSIS

The EAJA authorizes the payment of attorney's fees to a prevailing party in an action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Section

---

[2]Plaintiff's Reply cites an incorrect total number of fees ($4,340.43) based on the figures provided.

4

2412(d)(1)(B) sets a deadline of thirty days after final judgment for the filing of a fee application, which must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party"; (2) a showing that the applicant is "eligible to receive an award"; (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed"; and (4) an "alleg[ation] that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B)[3]; *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this matter, Plaintiff is a prevailing party because the Court reversed and remanded the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) in its August 3, 2006 Order. *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir. 1995) (discussing *Shalala* and providing that "a social security claimant who obtains a sentence four judgment reversing the Secretary's denial of benefits and requiring further proceedings in the agency becomes, for purposes of the EAJA, a 'prevailing party' upon remand"); *see also Coffman*

---

[3]Section 2412(d)(1)(B) provides, in its entirety:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

*v. Heckler*, 580 F.Supp. 67 (D.C. Cal. 1984) (holding that "by obtaining a stipulation to remand the case from the government, plaintiff has achieved a modicum of success that warrants an award of attorney's fees").[4]

The Commissioner argues that in order to be "eligible" for an EAJA award, a plaintiff must "show[]" that his or her net worth did not exceed $2,000,000 at the time the civil action was filed. The Commissioner contends that Plaintiff's mere allegation that he is "eligible" for fees based on his net worth without any supporting evidence fails to meet the standard and thus Plaintiff cannot recover attorney's fees. However, in a footnote, the Commissioner notes that some courts have allowed a fee applicant to amend or supplement a fee application even after the 30-day time period for filing the application has expired. Plaintiff replies that while the statute is unclear what form of evidence is required for a showing of "net worth", she asserts that his net worth did not exceed $2,000,000 at the time the civil action was filed. And further, in the instance that the Court requires a showing by affidavit, Plaintiff requests leave to amend or supplement her reply brief, which the Plaintiff ultimately did without leave of Court by filing a "Net Worth Affidavit" on November 20, 2006.

*1.     Net worth showing*

As to the net worth requirement, the EAJA provides that

> [a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and *is eligible to receive an award under this subsection* ... .

---

[4]The Commissioner does not challenge the Plaintiff's status as a "prevailing party" under the EAJA.

28 U.S.C. § 2412(d)(1)(B) (emphasis added). The Act then defines a "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed ... ." 28 U.S.C. § 2412(d)(2)(B). There is no consensus as to exactly what an EAJA applicant must submit in order to demonstrate his or her net worth. While some courts have held that a court's order granting a motion to proceed *in forma pauperis* meets the net worth requirement, s*ee Former Employees of Tyco Electronics, Fiber Optics Div. v. United States Department of Labor*, 350 F.Supp.2d 1075, 1087-88 (C.I.T. 2004), other courts have ruled that "financial records" provided by plaintiffs meet the financial eligibility requirements of the EAJA, *see Branstad v. Veneman*, 232 F.Supp.2d 945, 951-52 (N.D. Iowa 2002). However, there is no Seventh Circuit case law on point. The statute places the burden of establishing eligibility for fees squarely on the applicant. 28 U.S.C. § 2412(d)(1)(B); *Estate of Woll by Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994) ("As the party seeking to recover its litigation costs, the estate bore the burden of establishing that it met the net worth limitations of the EAJA") (citations omitted); *Kinney v. Federal Security, Inc.*, No. 01 C 0830, 2002 WL 31017644, at *2 (N.D. Ill. Sept. 9, 2002).

In support of her contention that he meets the net worth requirement of the EAJA, Plaintiff has filed a "Net Worth Affidavit", albeit late, in which she lists his assets. Therefore, the Court must determine whether the Plaintiff's "Net Worth Affidavit" meets the requirements of section 2412(d)(1)(B).

In support of her argument in opposition, the Commissioner relies on *Fields v. United States*, 29 Fed. Cl. 376 (1993), *aff'd* 64 F.3d 676 (Fed. Cir. 1995), in which the Court of Federal Claims held that a contractor was not a "party" within the meaning of the EAJA and thus not entitled to attorney fees absent "sufficient evidence so that his or her net worth may be ascertained and verified

7

by the court." *Id.* at 382. In *Fields*, the plaintiff, a government contractor, sought to demonstrate his financial eligibility that he, as an individual, did not have net worth in excess of $2,000,000, and, as a business, did not have net worth in excess of $7,000,000 nor have employees numbering more than 500. After the parties filed a joint stipulation for entry of judgment, the Court entered judgment in favor of the plaintiff and the plaintiff filed an EAJA application. In opposition to plaintiff's EAJA application, the government argued that the plaintiff was ineligible for attorney fees because he failed to present sufficient probative evidence to establish by the requisite quantum of proof that plaintiff is a "party" under the EAJA.

In denying plaintiff's fee application, the Court "disagree[d] with the plaintiff's hospitable contention that the submission of his self-serving, non-probative affidavit alone is sufficient to establish his status as a 'party' eligible for the award of fees under the EAJA." *Id.* at 382. The Court clarified its ruling: "A conclusory affidavit without supporting evidence is inadequate to establish such 'party' status. Thus, a petitioner requesting fees under the EAJA *must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Id* (emphasis in original) (citations omitted).

Interpreting *Fields*, a district court in this Circuit held that an employers' affidavits concerning their net worth filed in support of an EAJA fee application were insufficient to establish their individual eligibility for fees. *Kinney*, 2002 WL 31017644, at *1. Similarly to *Fields*, the Court in *Kinney* rejected the fee applicants "assertion that, absent concrete evidence by the government indicating that their net worth exceeded the statutory minimum, their conclusory, self-serving affidavits are sufficient to establish their eligibility." *Id.* at *4. Noting that the "obligation ... to establish eligibility in the first instance" rests on the fee applicants, *Kinney* concluded that

8

while the affidavits provided some indication as to their assets and liabilities, the Court "refuse[d] to 'speculate that the probabilities are that plaintiff m[et] the net worth eligibility requirements' of the EAJA." *Id* (quoting *Fields*, 29 Fed. Cl. at 383). In particular, the Court found that the affidavits did not contain information conforming to generally accepted accounting principles, but instead, the affidavits merely "set forth, in a fairly haphazard manner, their valuation of their assets and debts, which are often unsupported by corroborative documentation." *Id.* at *4. In addition, the Court pointed out that the affiants "ma[de] only sporadic attempts to value their assets and debts" as of the date of the filing of the civil action, and "in many instances, no such attempt [wa]s made." *Id.*

In the instant case, the Court finds the reasoning in *Fields* and *Kinney* to be persuasive.[5] Here, the Plaintiff submitted a Net Worth Affidavit, in which he breaks down his net worth into five categories: personal information, property, income, expenses, and other circumstances. As a threshold point, Plaintiff merely presents these figures in a summary fashion and fails to draw any conclusion, such as the Plaintiff's total net worth.[6] Because the Plaintiff bears the burden of proof to show eligibility as a "party" under the EAJA, *see* 28 U.S.C. § 2412(d)(1)(B), it is not the responsibility of the Court to calculate the Plaintiff's net worth for him.

Moreover, and more significant, Plaintiff's Net Worth Affidavit fails to constitute a showing of net worth in several respects. First, the legislative history to the EAJA provides: " 'Net worth' is calculated by subtracting total liabilities from total assets. In determining the value of assets, the

---

[5]Plaintiff attempts to distinguish *Fields* because it involved the assets of a corporation as opposed to an individual. *See* Pl.'s Reply at 2. While the Court finds that this is an empty distinction considering the fact that the same provision controls both factual scenarios, *see* 28 U.S.C. 2412 (d)(2)(B), the Plaintiff's argument is nevertheless factually incorrect because the plaintiff in *Fields* argued for eligibility under the EAJA as an individual as well as a corporation. Therefore, the Court's reasoning in *Fields* applies, as a factual matter, here.

[6]The EAJA does not define "net worth." According to Black's Law Dictionary, "net worth" refers to the "measure of one's wealth, usually calculated as the excess of total assets over total liabilities." Black's Law Dictionary 1639 (8th ed. 2004).

9

cost of acquisition rather than fair market value should be used." H.R. Rep. No. 1418, 96th Cong. 2d Sess. 15 (1980), 1980 U.S.C.C.A.N. 4984, 4994; *see also Continental Web Press, Inc. v. National Labor Relations Board*, 767 F.2d 321, 323 (7th Cir. 1985), *abrogation recognized on other grounds by*, *Hanrahan v. Shalala*, 831 F.Supp. 1440, 1451 (E.D. Wis. 1993); *United States v. 88.88 Acres of Land*, 907 F.2d 106, 107 (9th Cir. 1990); *Estate of Lute v. United States*, 19 F.Supp.2d 1047, 1061 (D. Neb. 1998). Plaintiff's Net Worth Affidavit fails to specify whether the provided values are based on the cost of acquisition. For example, Plaintiff lists a residence as an asset valued at $195,000, but fails to offer any specifics as to the date of that value.[7]

Second, Plaintiff's Net Worth Affidavit makes no attempt to establish that the information contained therein conforms to generally accepted accounting principles. *See Continental Web Press, Inc. v. National Labor Relations Board*, 767 F.2d 321, 323 (7th Cir. 1985) (noting that Congress's decision not to define "net worth" implies that "if [Congress] had thought about the question, it would have wanted the courts to refer to generally accepted accounting principles. What other guideline would there be?"); *Fields*, 29 Fed. Cl. at 383 (quoting *Continental Web Press*, 767 F.2d at 323) (failure to submit information consistent with generally accepted accounting principles "is fatal"); *Kinney*, 2002 WL 31017644, at *4 (finding that the affidavits at issue "clearly show[] that they have not submitted information conforming to generally accepted accounting principles").

Third, Plaintiff's Net Worth Affidavit merely lists assets unaccompanied by any supporting corroborative evidence. S*ee Fields*, 29 Fed. Cl. at 382 (requiring that "a petitioner requesting fees

---

[7]The Court is cognizant of the fact that due to depreciation over time, in most instances, the value of an asset at the time of acquisition will be less than its fair market value, thus assisting a fee applicant in staying under the $2,000,000 ceiling of net worth. Accordingly, in this case, the Court finds that Plaintiff's failure to value an asset (or affirmatively state that he valued the asset) at the time of acquisition as opposed to its fair market value is not, standing alone, fatal to his fee application.

10

under the EAJA must present sufficient evidence so that his or her net worth may be ascertained and verified by the court"); *Kinney*, 2002 WL 31017644, at *4 (noting that the movants' affidavits describing the value of their assets were "often unsupported by corroborative documentation"). While this Court declines to adopt a *per se* rule requiring an affidavit and/or corroborative evidence in order to show net worth, the Court looks to the other prescriptions requiring a showing under section 2412(d)(1)(B), i.e., "prevailing party" and "the amount sought", for guidance. Generally speaking, with regard to the former, this showing is demonstrated by the district court's decision, and, with regard to the latter, applicants file detailed statements, albeit explicitly required by the statute. In both instances however, through some form of additional corroborating evidence in addition to the fee applicant's representation, the Court is able to ascertain and verify the fee applicant's showing of his or her status as a "prevailing party" and "the amount sought". Here, based on the Plaintiff's bare bones Affidavit, the Court cannot determine that the Plaintiff's net worth is under $2,000,000 to any modicum degree of certainty, and thus the Court is left to speculate. While an affidavit in some instances may prove sufficient, in the instant case, such a bare statement of Plaintiff's assets without more fails to constitute a showing of net worth.

Fourth and finally, and perhaps most importantly, Plaintiff makes no attempt to value the assets listed in his Net Worth Affidavit as of the date of the filing of the Complaint for Judicial Review, i.e., August 12, 2005, as required by the EAJA. *See* 28 U.S.C. 2412(d)(2)(B) (defining "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed"). The Seventh Circuit has stressed the importance of the net worth requirement being valued at the time the civil action was filed:

> The net worth limitations of the EAJA reflect one of the underlying purposes of that statute ...-to make it economically feasible for

11

>private parties to challenge the unreasonable actions of a government with superior resources. The EAJA's focus on net worth at the time a suit is filed is consistent with this notion. An individual, for example, might be worth many millions of dollars when her dispute with the government arises but suffer a reversal of fortunes that leaves her with only modest resources when the time comes to litigate. At that juncture, she is no less deterred from filing suit against the governmental behemoth than an individual who was never well off to begin with.

*Estate of Woll v. United States*, 44 F.3d 464, 468 (7th Cir. 1994); *see also Kinney*, 2002 WL 31017644, at *4 (finding that the affidavits at issue "made only sporadic attempts to value their assets and debts as of ... the date the underlying action was filed; in many instances, no such attempt [wa]s made"). Plaintiff's Net Worth Affidavit is dated November 10, 2006, more than a year after the filing of the instant Complaint, and Plaintiff makes no attempt to value her deceased husband's assets as of the filing of his Complaint. Such a defect is fatal.

Accordingly, based on the foregoing facts and emphasizing that the Plaintiff bears the burden of proof to show eligibility as a "party", the Court finds that the Plaintiff's Net Worth Affidavit failed to show that his net worth did not exceed $2,000,000 as of the date of filing his Complaint.

*2.    Amendment/supplementation of fee application*

Throughout her Reply, Plaintiff requests that the Court allow her to amend her Fee Application. While the Supreme Court has held that a timely fee application may be amended after the 30-day filing period in order to cure an initial failure to allege that the government's position in the underlying litigation lacked substantial justification, *see Scarborough v. Prinicpi*, 541 U.S. 401 (2004), neither the Supreme Court nor the Seventh Circuit have ruled whether a timely fee application may be amended in order to cure an initial failure in establishing the net worth of the applicant. In fact, the Supreme Court in *Principi* specifically left this question open. *See id.* at 419

n.7 ("The question whether a fee application may be amended after the 30-day filing period to cure an initial failure to make the 'showings' set forth in the first sentence of 2412(d)(1)(B) is not before us. We offer no view on the applicability of 'relation back' in that situation"). While the Supreme Court went out of its way to not rule on the issue, a fact that this Court finds significant,[8] other circuits have allowed an amendment to a fee application after the 30-day filing period in order to cure an initial failure to establish that the fee applicant's net worth did not exceed $2 million, *Bazalo v. West*, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998) (holding that a fee applicant may supplement an EAJA application to cure an initial failure to show eligibility for fees); *Singleton v. Apfel*, 231 F.3d 853 (11th Cir. 2000) (holding that supplementation of timely filed EAJA fee application was permissible), or to amend other requirements of § 2412(d)(1)(B), *Dunn v. United States*, 775 F.2d. 99, 104 (3rd Cir. 1985) (holding that a district court could consider fee application filed within 30-day time period and could, absent prejudice to the Government, permit supplementation with affidavits detailing the amount of attorney fees sought). *Contra Sierra Club, Illinois Chapter v. Brown*, 1999 WL 652047, at *2 (concluding that, with regard to the eligibility of a "party" under the EAJA, "supplementation of the EAJA application should be permitted") (citing numerous cases in accord). However, even if this Court were to follow the Federal and Eleventh Circuit's lead in

---

[8]The Court opines that *Principi's* narrow holding, allowing a timely filed EAJA fee application to be amended after the 30-day filing period has run to cure an initial failure to allege that the government's position in the underlying litigation lacked substantial justification, would not extend to an insufficient showing of net worth based on the Court's distinguishing between the use of "show[]" and "allege" in § 2412(d)(1)(B). In particular, the Court made the following distinction: "*Unlike* the § 2412(d)(1)(B) prescriptions on what the applicant must *show* (his "prevailing party" status and "eligib[ility] to receive an award," and "the amount sought, including an itemized statement" reporting "the actual time expended and the rate at which fees and other expenses were computed"), the required "not substantially justified" allegation imposes no proof burden on the fee applicant. It is, as its text conveys, nothing more than an allegation or pleading requirement." *Principi*, 541 U.S. at 414 (first emphasis added and second emphasis in original). In other words, the fee applicant bears the burden of proof to show that his or her net worth does not exceed $2,000,000, and thus, as opposed to allowing an amendment to meet the burden of the net worth requirement as the Court ultimately allows with regard to meeting the pleading requirement of "not substantially justified", the appropriate action would be to conclude that an applicant failed to meet his or her burden and deny the motion.

13

*Bazalo* and *Singleton*, respectively, and allow such an amendment in order to show net worth, a position that this Court does not endorse considering the distinctions made by the Supreme Court in *Principi*, which came later in time than both cases, the Plaintiff has already amended his EAJA Fee Application after the 30-day filing period ran by filing the Net Worth Affidavit on November 20, 2006, nearly two months after Plaintiff filed a Reply.  This Court declines to give the Plaintiff a third bite at the apple.

## CONCLUSION

Because the Plaintiff failed to show that he qualified as a "party" under the EAJA, the Court now **DENIES** the Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act [DE 29] .

SO ORDERED this 7th day of June, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record